IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DONALD PETER MUCCIGROSSO JR,                     No. 3:16-cv-01624-HZ

                         Plaintiff,                              OPINION & ORDER

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security Administration,

                         Defendant.


Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

//

//

Billy Williams
United States Attorney
Janice Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Thomas Elsberry
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Donald Peter Muccigrosso, Jr. brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's symptom testimony; (2) discounting the opinions of medical providers; (3) discounting lay witness testimony; and (4) by relying on the Vocational Expert's ("VE") testimony that Plaintiff could perform certain jobs in the national economy. Because the ALJ improperly discredited testimony that, when credited as true, would warrant awarding benefits, the Court reverses the Commissioner's final decision and remands this case for an immediate award of benefits.

//

//

//

//

# BACKGROUND

Plaintiff applied for DIB and SSI on August 3, 2010, alleging a disability onset date of December 31, 2005. Tr. 607, 685.[1] Plaintiff's application was denied initially and upon reconsideration. Tr. 685. Plaintiff's first administrative hearing was held before ALJ Riley Atkins on December 12, 2012. Tr. 34. ALJ Atkins denied Plaintiff's claims in a written decision issued on December 21, 2012. Tr. 13. The Appeals Council denied review, rendering ALJ Atkins's decision final. Tr. 1–3. United States District Court Judge Michael McShane reversed the Commissioner's decision and remanded the case for further administrative proceedings on June 30, 2015. Tr. 684. Judge McShane ordered that upon remand:

> **1.** The ALJ shall revise [P]laintiff's RFC to reflect functional limitations on repetitive lifting, bending and stooping, and sitting in a stationary position.
>
> **2.** The ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental VE evidence.

Tr. 699. On March 22, 2016, Plaintiff appeared for his second administrative hearing before ALJ Paul Robeck. ALJ Robeck issued a partially favorable decision, finding that Plaintiff was disabled as of his fifty-fifth birthday, November 23, 2014. Tr. 617. ALJ Robeck also determined, however, that Plaintiff was not disabled from December 31, 2010, through November 23, 2014. Tr. 618–20. Plaintiff now seeks judicial review of that decision.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[1] "Tr." refers to the administrative record transcript, filed here as ECF 13.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

//

//

# THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2010. Tr. 607.

At step two, the ALJ determined that Plaintiff had the following severe impairments: "status post ankle fusion/arthrodesis; right shoulder AC joint arthrosis; and degenerative disc disease with a history of laminectomy in 2006[.]" *Id.*

At step three, the ALJ found that Plaintiff's impairments or combinations of impairments did not meet or equal the severity of one of the listed impairments. Tr. 609. Specifically, the ALJ concluded that Plaintiff's "physical impairment of degenerative disc disease does not meet or medically equal the criteria of listing 1.04 (Disorders of the spine), or any listing in the Listing of Impairments[.]" *Id.* The ALJ also concluded that Plaintiff's ankle and shoulder conditions did not meet or equal listing 1.02. *Id.*

Before step four, the ALJ determined that Plaintiff had the RFC to perform modified light work with the following limitations:

> [P]laintiff can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk with normal breaks approximately 2 out of 8 workday hours and sit for approximately 6 out of 8 workday hours. The claimant cannot climb anything other than stairs and ramps. The claimant can no more than occasionally stoop and bend. The claimant cannot engage in work at shoulder level or above. The claimant is unable to stand or sit in any stationary position for more than two consecutive hours.

Tr. 609–10.

At step four, the ALJ determined that Plaintiff has been unable to perform any past relevant work as a registered nurse since December 31, 2005. Tr. 617.

At step five, the ALJ determined that on November 23, 2009, Plaintiff's age category changed to an individual closely approaching advanced age and on November 23, 2014,

Plaintiff's age category changed again to an individual of advanced age. *Id.* Accordingly, the ALJ found that prior to November 23, 2014, transferability of Plaintiff's job skills was not material to determining disability. *Id.* Beginning on November 23, 2014, however, the ALJ found that Plaintiff had not been able to transfer job skills to other occupations. Therefore, the ALJ concluded prior to November 23, 2014, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy in significant numbers that Plaintiff could have performed Those jobs included: mail sorter; price marker; and packing line worker. Tr. 617–18. The ALJ found that beginning on November 23, 2014, there were no jobs that Plaintiff could perform and that he was disabled within the meaning of the Act. Tr. 619.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

//

DISCUSSION

Plaintiff contends that the ALJ's decision was not supported by substantial evidence and contains legal errors. Specifically, Plaintiff argues that the ALJ made the following four errors. First, the ALJ improperly rejected Plaintiff's subjective symptom testimony. Second, the ALJ improperly discredited the medical opinions treating neurological surgeon Dr. Darrell Brett, reviewing physician Dr. Mark Shoag, and examining physician Dr. Paolo Punsalan. Third, the ALJ improperly discredited the lay testimony of Plaintiff's friend, Lisa Cheeley. Lastly, the ALJ improperly relied on VE testimony that did not incorporate all of Plaintiff's limitations.

## I.        Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly rejected his testimony regarding the severity and extent of his limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

The ALJ found that Plaintiff's activities of daily living, record of conservative medical treatment, and sporadic work history were inconsistent with Plaintiff's subjective complaints.

An ALJ may use a claimant's activities of daily living to find that the claimant may have a greater level of activity than she claims. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ found that Plaintiff's "functional limitations are not as significant and limiting as alleged." Tr. 613. The ALJ explained:

> For example, his daily activities are quite involved. The claimant told his treating provider in December 2007 he was exercising in an effort to lose weight. He testified he plays guitar in public for tips. He carries his guitar. He lives independently. He performs household chores. He shops in stores for groceries. He prepares meals daily. He manages finances. He watches television. He commutes by driving, receiving rides from others, and using public transportation. He welcomes friends into his home. He visits coffee shops regularly. These activities are consistent with the above [RFC] and are inconsistent with the claimant's allegations. They suggest greater functioning than alleged in his application and testimony.

*Id.* (internal citations omitted). Plaintiff testified that he is in an absolute state of "abject misery," suffering from pain that he described as 10 out of 10. Tr. 60, 610. He claimed that he was unable to stand or sit for more than few minutes without pain. Tr. 10, 59, 237. He also stated that he could not reach overhead, had a very limited range of motion with his arms, and that he could hardly lift a gallon of milk. Tr. 61–62.

The ALJ rationally interpreted the evidence to conclude that Plaintiff's activities of daily living contradicted Plaintiff's testimony about his symptoms. For example, Plaintiff's testimony that he could play guitar, drive a car, and go grocery shopping belied his claims that he could not sit or stand for more than a few minutes and that he experienced severe weakness and numbness in his arms and hands. Accordingly, this was a legitimate basis for the ALJ to discount Plaintiff's allegations.

Second, the ALJ found that Plaintiff's subjective complaints were not completely consistent with his medical treatment record. Evidence of conservative treatment can support an ALJ's adverse credibility determination. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ explained:

While the claimant asserts numerous subjective complaints, the record reveals he has received only conservative and routine treatment in recent years. He has taken Tylenol, Ibuprofen, and marijuana to treat pain more recently, but claims he cannot afford cannabis now. There is no medical marijuana card in evidence. Despite chronic marijuana use, the claimant testified he "absolute[ly] live[s] in abject misery with his pain." He continued, "I know what living in pain is, and it's . . . it's my life." His testimony indicates he has continued to use marijuana without a medical marijuana card even though it has no effect on his level of pain. The medication in this case is therefore not consistent with the alleged severity of his impairments. He testified he does not use prescribed pain medication because the side effects are worse than the underlying condition. His conservative treatment does not reveal the need for a functional limitation greater than indicated in the residual functional capacity.

Tr. 613–614. Plaintiff argues that the medical record supports his claimed functional limitations. The Court recognizes that the ALJ's analysis of Plaintiff's course of treatment focuses solely on Plaintiff's pain allegations. The ALJ did not discuss how Plaintiff's testimony regarding his functional limitations was contradicted by conservative treatment. Furthermore, Plaintiff testified that he did not take pain medication because he could not afford it and because it "ruined" his digestive system. Tr. 59–60. In *Carmickle*, the Ninth Circuit determined that the ALJ had erred in concluding that the plaintiff's use of Ibuprofen belied his pain testimony where the plaintiff testified that he did not take other pain medication because of the adverse side effects. *Carmickle*, 533 F.3d at 1162. Plaintiff suffered from gastroesophageal reflux disease and irritable bowel syndrome. Tr. 870. A review of the medical record shows that on multiple occasions Plaintiff expressed to medical providers that he did not want to use narcotics for pain even though he was in severe pain. Tr. 866, 949. The ALJ failed to address Plaintiff's reasons for not using prescribed pain medication. Otherwise, the ALJ did not provide substantial evidence supporting the determination that Plaintiff's testimony regarding his functional limitations was

contradicted by a conservative course of treatment. Accordingly, the ALJ erred in relying on a conservative course of treatment as a basis for discounting Plaintiff's testimony.

Third, the ALJ found that Plaintiff had a "sporadic work history" that suggests that Plaintiff is not "motivated to work consistently." Tr. 614. Evidence of an "extremely poor work history" can show that the plaintiff has "little propensity to work in her lifetime." *Thomas*, 278 F.3d at 959. The ALJ recited Plaintiff's "limited earnings even before the alleged onset of disability."

> He earned $1,874 in 1992, $111 in 1993[,] $2,484 in 1994, $5,203 in 1999, $14 in 2000, $4,877 in 2001, $12,641 in 2002, $13,311 in 2003, $29,066 in 2004, and $10,842 in 2005. He had no earnings in 1995 through 1998.

Tr. 614. The Court notes that between 1996 and 1999, Plaintiff attended nursing school and on May 18, 1998, Plaintiff injured his right shoulder in a motorcycle accident. Tr. 695. While some of the gaps in Plaintiff's earning history are explained by his time spent in school and recuperating from injuries, it was rational for the ALJ to conclude based on Plaintiff's overall earning history that "factors other than his alleged impairments affect his ability to maintain full time employment." Tr. 614. Plaintiff's earning history was consistently poor and there were unexplained periods when he had no earnings. Tr. 199–200, 695–96.

On balance, the ALJ's reasons for rejecting Plaintiff's testimony are sound and supported by substantial evidence in the record. The Court, therefore, affirms the ALJ's overall adverse credibility determination even though it does not accept all of the ALJ's proffered reasons for rejecting Plaintiff's complaints. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197–98 (9th Cir. 2004) (upholding the ALJ's credibility determination while not accepting all of the ALJ's reasons for rejecting the claimant's testimony); *Carmickle*, 533 F.3d at 1168 (holding that the "relevant inquiry" in the credibility context is "not whether the ALJ would have made a

different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error").

## II.  Medical Opinions

Plaintiff argues that the ALJ erred by according less than full weight to the medical opinions of Drs. Brett, Shoag, and Punsalan. Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to

the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *Id.* at 1161; *Orn*, 495 F.3d at 632–33.

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir.2012) (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996)).

**A.     *Dr. Brett***

Dr. Brett, a neurological surgeon, was Plaintiff's treating provider. Plaintiff met with Dr. Brett between May and October of 2006 to treat back and leg pain resulting from a December 8, 2005 car accident. Tr. 295–307. On June 14, 2006, Dr. Brett performed an extensive lumbar laminectomy on Plaintiff. Tr. 305. On June 22, 2006, after a follow-up appointment, Dr. Brett wrote:

> [Plaintiff] returns today doing very nicely with resolution of all radicular pain, and he is very pleased with the results of surgery. He has no objective neurological deficit. His wounds are healing well. . . . He should remain off work and can gradually increase his activities at home, and he was given instructions regarding abdominal and back strengthening exercises and the principles of back mechanics.

Tr. 294. Dr. Brett reassessed Plaintiff on August 29, 2006. *Id.* After that meeting, Dr. Brett wrote that Plaintiff could return to modified light work "provided he not lift or carry more than 25 lbs., perform any repetitive lifting, bending, or stooping, or be required to sit or stand in a stationary position for more than two consecutive hours. I expect these will be permanent restrictions." *Id.* Dr. Brett later increased Plaintiff's lifting restriction to 35 pounds. Tr. 313.

The ALJ accorded Dr. Brett's opinion "little weight," explaining that:

> Other than Dr. Brett's assessment that the claimant could not return to a nursing position, being limited to essentially an overall

light exertional level, and being unable to stand or sit in any stationary position for more than two consecutive hours, I give this opinion little weight. Dr. Brett's assessment of the claimant being unable to perform any repetitive bending, lifting, or stopping [sic] is inconsistent with the claimant's sporadic work history or robust activities of daily living described above. It is also inconsistent with the claimant the overall medical evidence record concerning the claimant's back, including the fact that surgery was noted to have resolved the claimant's radicular pain, no subsequent objective neurological deficits and the fact that the claimant's pain was controlled except after an exacerbation caused by heavy lifting, and with respect to the claimant's shoulder, the absence of surgery, a physical examination revealed only marginal weakness, and the claimant's pain being controlled with marijuana.

Tr. 615 (internal citations omitted).

The Court finds that Dr. Brett's opinion was supported by medically acceptable diagnostic techniques, consistent with substantial evidence in the medical record, and therefore entitled to controlling weight. Dr. Brett met with Plaintiff at least eight times within a several month period in 2006 and was the physician with the most knowledge about Plaintiff's conditions. Dr. Brett's opinion was consistent with the myelogram of Plaintiff's spine, a CT scan that he conducted, and a review of a prior MRI. Tr. 298. Dr. Brett's opinion was also consistent with the opinions of other medical providers in the record. For example, Dr. Shoag, a non-examining physician, adopted Dr. Brett's limitation that Plaintiff could not perform any repetitive lifting, bending, and stooping. Tr. 294, 296, 1171. Dr. Punsalan, an examining physician, also confirmed Dr. Brett's assessment of Plaintiff's limitations. Tr. 1174–75, 1180. Indeed, the previous ALJ who reviewed the same medical opinion and supporting diagnostic evidence wrote: "I give this opinion great weight because it is consistent with the record as a whole. As the claimant's treating provider, who has observed the claimant's impairments over time, Dr. Brett is in an advantageous position from which to assess functional capacity." Tr. 25.

While Plaintiff's activities of daily living and sporadic work activity were sufficient to support the ALJ's decision to discredit Plaintiff's subjective complaints, those same reasons were not sufficiently clear and convincing enough to warrant discrediting the uncontradicted opinion of the treating surgeon whose assessment was consistent with the overall medical record. The activities that the ALJ identified, such as playing guitar, driving, and grocery shopping, were not inconsistent with Dr. Brett's assessment of Plaintiff's limitations. Furthermore, Plaintiff's prior work history, while relevant to Plaintiff's motivation, has no bearing on Dr. Brett's assessment of Plaintiff's functional limitations and did not therefore form a legitimate basis for the ALJ to reject Dr. Brett's medical opinion. Accordingly, the Court concludes that the ALJ erred by according Dr. Brett's opinion "little weight."

**B.      *Dr. Shoag***

Next, Plaintiff argues that the ALJ improperly accorded little weight to the opinion of non-examining physician Dr. Shoag. Dr. Shoag reviewed Plaintiff's medical records, including Dr. Brett's treatment notes and opinion, and concluded that Plaintiff met Listing 1.04 as of May 15, 2006. Tr. 1170. Dr. Shoag opined, in part, that Plaintiff had the following functional limitations as of December 31, 2010:

> He would have at that time been limited to standing and walking for a total of two hours in an eight hour work day, lifting and carrying less than 10 lbs occasionally and frequently, *and never performing any repetitive lifting, bending, and stooping*. The restriction as to standing and walking only two hours in an eight hour day is based on both his back and right ankle pain. The lifting and carrying limit is based on my opinion that she should have lifted little weight (1-2 lbs) with the right arm and no more than 10 lbs total should have been lifted with both arms because that would have exacerbated his back pain. He was limited to only occasionally . . . reaching in all directions on the right side (overhead and at right shoulder height). He also would have been precluded from sitting for more than two consecutive hours. He

should not have stood or walked for more than 20 minutes at a time.

Tr. 1171 (emphasis added).

The ALJ accorded Dr. Shoag's opinion "little weight" because Dr. Shoag "never examined the claimant, and the restrictions he proposes, included limitations to unskilled work, exceed those of even the claimant's treating providers." Tr. 615. The ALJ also argued that Dr. Shoag's opinion was inconsistent with Plaintiff's "robust" activities of daily living and sporadic work history discussed above. *Id.* The ALJ elaborated:

> It also does not square with the overall medical evidence record concerning the claimant's back, including the fact that surgery was noted to have resolved the claimant's radicular pain, no subsequent objective neurological deficits and the fact that the claimant's pain was controlled except after an exacerbation caused by heavy lifting, and with respect to the claimant's shoulder, the absence of surgery, a physical examination revealing only marginal weakness, and the claimant's pain being controlled with marijuana.

*Id.*

It was legitimate for the ALJ to accord Dr. Shoag's opinion little weight to the extent that it included lifting limitations that were inconsistent with what other medical sources claimed. *Morgan*, 169 F.3d 602; 20 C.F.R. §§ 404.1527(c)(4). Dr. Shoag, a non-examining medical source, opined that Plaintiff as limited to lifting no more than ten pounds occasionally or frequently, whereas Dr. Brett, the treating surgeon, opined that Plaintiff could lift thirty-five pounds. Tr. 313, 1171. While the ALJ accorded Dr. Brett's opinion little weight as well, he did not specifically reject Dr. Brett's opinion regarding Plaintiff's lifting limitations and it was permissible for the ALJ to give Dr. Brett's opinion greater weight than Dr. Shoag's opinion in this instance.

Dr. Shoag's opinion was consistent with Dr. Brett's opinion regarding Plaintiff's limitations in: standing; sitting; and repetitive lifting, bending, and stooping. Tr. 294, 1171. For the same reasons discussed above regarding Dr. Brett, it was not legitimate for the ALJ to rely on Plaintiff's activities of daily living and work history to reject Dr. Shoag's opinion about these limitations. *See supra* Part I.A. The ALJ did not specifically explain how Plaintiff's activities of daily living or work history were inconsistent with Dr. Shoag's opinion about Plaintiff's postural and repetitive lifting, bending, and stooping limitations.

Lastly, the ALJ accorded Dr. Shoag's opinion little weight on the ground that it did "not square with the overall medical evidence record concerning [Plaintiff's] back." Tr. 615. The ALJ noted that the medical record showed that surgery resolved Plaintiff's radicular pain and that there were no subsequent objective neurological deficits. *Id.* Dr. Shoag's opinion regarding Plaintiff's postural and repetitive lifting, bending, and stooping limitations was consistent with the medical record and the opinions of Drs. Brett and Punsalam. Dr. Shoag's opinion was based on a review of nearly all of the medical evidence contained in the administrative record. Tr. 1170 (stating that he "had the opportunity to review [Plaintiff's] medical records, including Exhibits 1F–23F"). Regarding radicular pain, on March 3, 2015, Dr. Punsalan wrote that for more than half of his hour-long meeting with Plaintiff, "the time was spent counseling the patient regarding chronic remittent radicular low back pain" among other back and spinal issues. Tr. 1115–16. While Dr. Brett did note in late June of 2006 that surgery resolved Plaintiff's radicular pain, on October 12, 2006, Dr. Brett wrote that Plaintiff returned "still having low back discomfort, worse on the left." Tr. 296. Given that Dr. Shoag's opinion was consistent with rather than inconsistent with the medical record as a whole, the Court finds that the ALJ's did not give specific or

legitimate reasons supported by substantial evidence in the record to accord his opinion little weight.

## C.    *Dr. Punsalan*

Dr. Punsalan, an examining provider who works at the OHSU Spine Center, first met with Plaintiff in March 2015. Dr. Punsalan wrote his opinion on March 7, 2016, in response to Plaintiff's attorney-generate questionnaire. Tr. 1174–78. The ALJ gave Dr. Punsalan's opinion "some weight." Tr. 615–16. When Prompted to asses Plaintiff's limitations as of December 12, 2006, Dr. Punsalan wrote that he agreed with Dr. Brett's assessment of Plaintiff's thirty-five pound lifting limitation as well as Plaintiff's repetitive lifting, bending, and stooping limitations. Tr. 1174–75. Further, Dr. Punsalan agreed with Dr. Brett that Plaintiff could not sit or stand for more than two consecutive hours. *Id.* When prompted to evaluate Plaintiff's limitations based on his right upper extremity, Dr. Punsalan declined and wrote that the assessment was not within his specialty. Tr. 1176. He also wrote: "Regarding patient function before I personally evaluated patient, difficult to give opinion as patient had multiple issues during this period, orthop[]edic and otherwise that could have affected his function to greatly varying degrees." Tr. 1178. The ALJ gave Dr. Punsalan's opinion "some weight." The ALJ explained:

> The opinion was rendered after the established onset date, however, and Dr. Punsalan stated he had not even commenced treating the claimant until after the established onset date. While Dr. Punsalan stated initially that he agreed with Dr. Brett's opinion, later he appears to equivocate and even recant such assessment.

Tr. 616. An ALJ is "not required to incorporate limitations phrased equivocally into the RFC." *Collum v. Colvin*, No. 6:13-cv-01173-AA, 2014 WL 3778312, *4 (D. Or. July 30, 2014) (citing *Valentine*, 574 F.3d at 691–92). For example, an ALJ may reject functional limitations prefaced with language such as "might," "may," or "would also likely require." *Id.* (citing *Glosenger v.*

*Comm'r Soc. Sec. Admin*, No. 3:12-cv-1773-ST, 2014 WL 1513995, *6 (Apr. 16, 2014)).

Statements including such language may be excluded by an ALJ because they are not diagnoses or descriptions of a plaintiff's functional capacity. *See Valentine*, 574 F.3d at 691–92 (upholding the ALJ's rejection of an equivocal medical observation because it was "neither a diagnosis nor a statement of [the plaintiff's] functional capacity" and finding that it was "rather a recommended way for [the plaintiff] to cope with his PTSD symptoms").

Here, Dr. Punsalan did not make any equivocal statements about Plaintiff's limitations. He said from the outset, based on the medical record and his own treatment of Plaintiff, that Plaintiff was limited to lifting no more than thirty-five pounds; could not do any repetitive lifting, bending, or stooping; and could not sit or stand for more than two consecutive hours. Tr. 1175. Dr. Punsalan then refused to opine about any further limitations as of December 31, 2010, based on Plaintiff's right upper extremity because such an assessment was not within his specialty at the OHSU Spine Center. Tr. 1176. There are no equivocal statements from Dr. Punsalan in the record, such as any "possible" limitations that Plaintiff "might" have. *See Burrell v. Colvin*, 775 F.3d 1133, 114 (9th Cir. 2014). Rather, Dr. Punsalan explained that he would not opine about limitations outside of his area of expertise and merely suggested that other issues "could have" affected Plaintiff's functioning. Tr. 1178. It was not, therefore, a rational interpretation of the record to conclude that Dr. Punsalan made equivocal statements about Plaintiff's limitations. Accordingly, the ALJ did not provide specific and legitimate reasons for discrediting Dr. Punsalan's opinion.

### III.  Lay Witness Testimony

Lastly, Plaintiff challenges the ALJ's treatment of the lay testimony of Ms. Cheeley, Plaintiff's friend. "In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay witness testimony include: conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

Ms. Cheeley completed her third-party function report on October 27, 2010. Tr. 234. She stated that she had known Plaintiff for eighteen months. During that time she: visited Plaintiff several times a week; watched TV with him; and helped him with chores and groceries. Tr. 227. With respect to Plaintiff's functioning, Ms. Cheeley wrote that Plaintiff "lives with severe chronic pain that limits his mobility and ability to walk, stand, and sit to a few minutes at a time. His right shoulder injury is so severe he can barely lift his right arm and these injuries make it so he can not [sic] work." *Id.* Regarding Plaintiff's mobility, Cheeley stated that after walking 100 yards Plaintiff would need to rest for five to ten minutes and that he would often wear an ankle brace. Tr. 232–33. In addition, she stated that Plaintiff would go shopping for light household supplies and groceries two to three times a week for an hour or two. Tr. 230. Ms. Cheeley also indicated that Plaintiff's conditions affected his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, and complete tasks. Tr. 232.

The ALJ gave Cheeley's testimony "some weight" finding that it was "generally consistent with the record." Tr. 616. The ALJ elaborated:

> However, the evidence shows the claimant is able to walk. For
> example, he does not own a car. He is able to carry his guitar to
> coffee shops and public markets, where he performs for tips. He
> shops in stores for groceries. There is no indication that he uses a
> motorized carts [sic] when spending two hours shopping for food.
> It is unclear how he spends two to three hours a day playing guitar
> in public if he cannot stand or sit for more than a few minutes at a
> time.

Tr. 616. The Court finds that the ALJ did not give germane reasons sufficient to discount

Cheeley's testimony. First, Cheeley's testimony was not inconsistent with the ALJ's conclusion

that Plaintiff could walk. Rather, Cheeley merely stated that Plaintiff often wore an ankle brace

and had to take frequent breaks after walking short distances. Tr. 232–33. Cheeley did not state

that Plaintiff was unable to walk as the ALJ implies. Tr. 515. Second, the ALJ's statement that

Plaintiff did not use a motorized cart to shop is outside the scope of the record and unrelated to

Cheeley's testimony.

Moreover, the Court does finds that the ALJ gave a germane reason for discounting

Cheeley's testimony regarding Plaintiff's ability to sit. Cheeley stated that Plaintiff could only sit

for a few minutes at a time; however, she also testified that he would watch TV for hours and

play guitar at a coffee shop four to five times a week for two to three hours. Tr. 227, 231. Ms.

Cheeley did explain that Plaintiff suffered pain while playing guitar and could not do it for as

long as he used to be able to. The ALJ rationally interpreted the evidence to conclude that

Plaintiff's activities of daily living involving sitting contradicted Cheeley's testimony that

Plaintiff could only sit for a few minutes at a time.

On balance, while the ALJ gave a germane reason for discounting Cheeley's testimony

regarding Plaintiff's sitting functionality; his other reasons described above were not germane to

Cheeley and when considered together, provided an insufficient basis for discounting Cheeley's

testimony regarding Plaintiff's other functional limitations.

## IV.     Remand

Because the Court concludes that the ALJ's decision contained harmful legal errors and was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate award of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell*, 775 F.3d at 1141. Regarding the first factor, the Court finds that the record in this case—after reaching the District of Oregon for the second time—has been fully developed. On first remand, Judge McShane directed the ALJ to revise Plaintiff's RFC regarding his limitations in repetitive lifting, bending, stooping, and sitting in a stationary position. Tr. 6. The record regarding those limitations has been developed. All three of the medical providers discussed above opined that Plaintiff could not perform any repetitive lifting, bending, or stooping. Regarding the second factor, the Court finds that the ALJ provided legally insufficient reasons for rejecting medical opinions and lay testimony. Furthermore, there are no outstanding issues requiring resolution.

Regarding the third factor, had the ALJ incorporated the limitations described in the improperly rejected testimony, the ALJ would be required to find Plaintiff disabled. The VE testified at Plaintiff's second administrative hearing that all three of the jobs that Plaintiff could perform required frequent lifting, reaching, handling, fingering, and feeling. Tr. 647–48. Dr. Brett, Shoag, and Punsalan's improperly rejected testimony could not perform *any* repetitive lifting, bending, or stooping. Considering this testimony and a record as a whole, substantial evidence supports Plaintiff's entitlement to benefits.

Furthermore, a second remand for additional administrative proceedings would allow "the Commissioner to decide the issue again and create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2012) (citing *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)). "Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Id.* (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1998)). Because Plaintiff is already of an advanced age and has experienced a seven-year delay in his application, any further remand of this case would unfairly delay effectuating the purpose of the Act and cause Plaintiff financial hardship.

//

//

//

//

//

## CONCLUSION

The Commissioner's decision is reversed and remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this *13* day of *November*, 2017

MARCO A. HERNÁNDEZ
United States District Judge